DAVID LEVINSON ET AL. *v.* CONNECTICUT BOARD OF CHIROPRACTIC EXAMINERS ET AL.
(13354)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued March 1—decision released June 20, 1989

*Paul J. Lahey,* assistant attorney general, with whom were *Thomas J. Ring,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* acting attorney gen-

eral, and *Robert E. Walsh* and *Richard J. Lynch,* assistant attorneys general, for the appellant-appellee (named defendant).

*Richard Fuchs,* with whom, on the brief, was *Joan C. Harrington,* for the appellee-appellant (plaintiff Debra Weiss-Levinson).

HULL, J. This case involves appeals taken by two chiropractors, David Levinson (Levinson) and Debra Weiss-Levinson (Weiss-Levinson), from disciplinary decisions of the defendant state board of chiropractic examiners (board). The board suspended the plaintiffs' chiropratic licenses and ordered each of them to pay fines. The plaintiffs appealed the board's decisions to the Superior Court. The trial court sustained the appeal as to Levinson and remanded the case to the board for action commensurate with its decision. The appeal as to Weiss-Levinson was dismissed by the trial court. The board then appealed to the Appellate Court the trial court's decision sustaining the appeal as to Levinson, and Weiss-Levinson cross appealed the trial court's dismissal of the appeal as to her. We transferred the case to this court pursuant to Practice Book § 4023. We find error on the board's appeal and remand the case to the trial court with direction to render judgment dismissing the appeal as to Levinson; we find no error on Weiss-Levinson's cross appeal.

The factual and procedural background of this case is not in dispute. On December 20 and 21, 1983, a notice of hearing and statement of charges were filed against the plaintiffs by the defendant department of health services. The hearing was held before the board on March 6, 1984. The notice of charges directed to Levinson stated in relevant part:

"FIRST COUNT: During February and March of 1982 David Levinson negligently or incompetently

failed to properly diagnose Andrea Paldino which conduct is a violation of Connecticut General Statutes Section 20-29. . . .[1]

"THIRD COUNT: On or about the 5th of February 1982 David Levinson negligently or incompetently diagnosed and/or treated Andrea Paldino by failing to take proper x-rays which conduct is a violation of Connecticut General Statutes § 20-29."

The notice of charges directed to Weiss-Levinson stated: "FIRST COUNT: On or about the 5th of February 1982 Debra Weiss-Levinson practiced chiropractic upon Andrea Paldino during a time when Debra Weiss-Levinson was not licensed under Chapter 372 of the General Statutes of Connecticut which conduct is a violation of Connecticut General Statutes § 20-27, § 20-29 and § 20-33.

"SECOND COUNT: On or about the 8th of February 1982 Debra Weiss-Levinson practiced chiropractic upon Andrea Paldino during a time when Debra Weiss-Levinson was not licensed under Chapter 372 of the General Statutes of Connecticut which conduct is a violation of Connecticut General Statutes § 20-27, § 20-29 and § 20-33.

After a contested hearing the board issued a memorandum of decision, dated September 28, 1984. The board made the following factual findings:

---

[1] General Statutes § 20-29 provides in pertinent part:"DISCIPLINARY ACTION. GROUNDS. The board of chiropractic examiners may take any of the actions set forth in section 19a-17 for any of the following reasons . . . illegal, incompetent or negligent conduct in the practice of chiropractic."

"[General Statutes] Sec. 20-24. DEFINITIONS. (a) The practice of chiropractic means the practice of that branch of the healing arts consisting of the science of adjustment, manipulation and treatment of the human body in which vertebral subluxations and other malpositioned articulations and structures that may interefere with the normal generation, transmission and expression of nerve impulse between the brain, organs and tissue cells of the body, which may be a cause of disease, are adjusted, manipulated or treated."

"1. David Levinson, D.C., at all pertinent times was licensed to practice chiropractic by the State of Connecticut, Department of Health Services.

"2. Pursuant to § 4-182 (c), Conn. Gen. Stat., the respondent was provided a full opportunity prior to the institution of agency action to show compliance with all the terms for the retention of his license.

"3. On February 5, 1982, Andrea Paldino of West Hartford received a telephone call from Debra Weiss-Levinson, who introduced herself as Dr. Weiss of the Farmington Chiropractic Center.

"4. Debra Weiss told Ms. Paldino that she had learned of her health problem, i.e. persistent cough and headache, from another patient, Joseph Mirabella.

"5. After a conversation in which she described the advantages of manipulation and adjustment of the spine, Debra Weiss urged Ms. Paldino to make an appointment for an examination at the Chiropractic Center.

"6. Ms. Paldino made an appointment for the same day, February 5, 1982. She filled out a confidential patient case history which listed neck pain, lower back pain and bronchitis as her major complaints.

"7. During the February 5, 1982 appointment, Debra Weiss discussed and explained chiropractic to Ms. Paldino and advised her in order to diagnose her case that she would have to take x-rays and conduct an examination.

"8. Debra Weiss proceeded to take several x-rays of Andrea Paldino. She also performed a kinesiological examination which included testing of reflexes and testing of muscle balance and strength.

"9. On February 8, 1982, Andrea Paldino returned to the Chiropractic Center for her second appointment.

"10. During the February 8 appointment, Debra Weiss interpreted Ms. Paldino's x-rays, pointing out that the chest x-ray contained small white dots around the top portion of her chest, indicating that there was lot of mucus in this area, and that the x-ray of the lower spine indicated that it was not formed correctly.

"11. During the aforementioned appointment, Debra Weiss also interpreted the results of Ms. Paldino's kinesiology examination, pointing out that one of her legs was shorter than the other and that she had weak areas all over her body. On a subsequent occasion, Debra Weiss interpreted a laboratory report on some blood work performed on Ms. Paldino.

"12. During the February 8 appointment, Debra Weiss explained that the treatment of Ms. Paldino's difficulties would include therapeutic massage of the chest and chiropractic adjustments in order to properly align the spine.

"13. At the time of the February 5 and 8, 1982, appointments, Debra Weiss was not licensed to practice chiropractic by the State of Connecticut. Such a license was issued to Debra Weiss on August 16, 1982.

"14. An advertisement in the 1982 Hartford Telephone Directory Yellow Pages indicated that at the time of Ms. Paldino's appointments at the Chiropractic Center, Debra Weiss held herself out as a doctor of chiropractic. Bills issued to Andrea Paldino by the Chiropractic Center also indicated that Debra Weiss held herself out as a doctor of chiropractic at the time of Ms. Paldino's appointments.

"15. During the February 8, 1982 appointment, Ms. Paldino was seen for the first time by Dr. David Levinson, who administered a chest massage for her. At this and subsequent appointments, Dr. Levinson performed certain chiropractic adjustments on Ms. Paldino's back.

"16. There is no indication that Debra Weiss or Dr. Levinson ever performed a pulmonary evaluation of Andrea Paldino.

"17. On or about March 28, 1982 Andrea Paldino stopped going to the Chiropractic Center for treatment. At that time her neck and back pain had improved, but her bronchitis and accompanying cough still continued.

"18. On July 25, 1982 Andrea Paldino was admitted to New Britain General Hospital where she was found to have a malignant mass and operated on."

With respect to Levinson, the board concluded in part:

"First Count

"21. [General Statutes] § 20-29 provides in pertinent part that: 'The board of chiropractic examiners may take any of the actions set forth in [General Statutes] § 19a-17 for any of the following reasons: . . . *illegal, incompetent or negligent conduct in the practice of chiropractic.*' (Emphasis added.)

"22. Dr. David Levinson's failure to conduct a thorough examination of the pulmonary and respiratory systems of Ms. Paldino is significant. A patient complaining of bronchitis is entitled to have an examination to evaluate bronchitis, and failure to do so represents negligence on the part of the doctor. Reliance upon kinesiology, orthopedics, and x-ray evaluation of bone structures is insufficient to the evaluation of bronchitis.

"23. Dr. David Levinson acted illegally in allowing an unlicensed person to represent herself as a doctor of chiropractic, and to engage in conduct which falls within the practice of chiropractic. Moreover, by relying on the results of an examination conducted by an

unlicensed person, he negligently failed to diagnose or treat Andrea Paldino properly. . . .

"Third Count[2]

"25. Because Andrea Paldino complained of bronchitis, it was negligent of Dr. David Levinson not to take thorough chest x-rays on 5 February 1982."

As to Weiss-Levinson, the board concluded in part:

"First and Second Counts[3]

"27. Debra Weiss identified herself to Andrea Paldino as a doctor of chiropractic and represented herself as such. At no point did Debra Weiss indicate that she was other than a licensed professional. Such activities as diagnosis, x-ray interpretation and the performance of a kinesiological examination fall within the practice of chiropractic. The examination performed by Debra Weiss on Ms. Paldino was part of the diagnostic process that would typically be employed by a chiropractor. Chiropractic treatment includes the steps which lead to the actual adjustments.

"28. By the conduct in which she engaged, Debra Weiss-Levinson unequivocally violated two statutes. Section 20-27 of the Connecticut General Statutes dictates that: 'No person shall engage in the practice of chiropractic in this state until he has obtained a license.' In addition, [General Statutes] § 20-33, as revised by Public Act No. 84-526, provides in part that: 'Any person, except a physician or surgeon licensed under the provisions of chapter 370, who practices or attempts to practice chiropractic . . . or who uses the title 'Chiropractor,' 'D.C.,' or any word or title to induce the belief that he is engaged in the practice of chiroprac-

---

[2] Dr. David Levinson was cleared of counts two and four charged against him.

[3] The board took no action on counts three through six against Weiss-Levinson because of lack of jurisdiction over these charges.

tic, without complying with the provisions of this chapter, or any person who violates any provision of this chapter, shall be fined not more than five hundred dollars or imprisoned not more than five years or both. For the purposes of this section, each instance of patient contact or consultation which is in violation of any provision of this chapter shall constitute a separate offense . . . . ' This Board finds that, as stated in the First and Second Counts against her, Debra Weiss-Levinson violated [General Statutes §§ ] 20-27 and 20-33 by practicing chiropractic on at least two occasions in February 1982, despite having not yet obtained a Connecticut license.

"29. The First and Second Counts of the Statement of Charges brought against Debra Weiss-Levinson do not explicitly allege that she violated § 20-33 by using 'any word or title' to misrepresent herself as a licensed chiropractor at a time when she was unlicensed. The Board therefore finds Debra Weiss-Levinson guilty of violating § 20-33 solely for her attempts to practice chiropractic without a license and makes no finding on the issue of whether she also misrepresented herself, in violation of § 20-33.

"30. Section 20-29 of the Connecticut General Statutes authorizes the Board of Chiropractic Examiners to take disciplinary action for a number of reasons, including 'violation of any provisions of this chapter or regulations adopted hereunder . . . and illegal . . . conduct in the practice of chiropractic.' Accordingly, the Board, having found Debra Weiss-Levinson guilty of violating both § 20-27 and § 20-33 as charged in the First and Second Counts, has authority to impose sanctions against her." The board then imposed serious sanctions on both Levinson and Weiss-Levinson.

On the plaintiffs' appeals from the board's orders the trial court found that (1) on the date of the hearing the

board consisted of only two of its three members, both of whom were professional members (i.e. chiropractors) as distinguished from public members, and (2) each notice contained "a short and plain statement of the matters asserted" as required by General Statutes § 4-177 (b) (4).

Concerning the evidence before the board with respect to Levinson, the trial court found that the board could have concluded that there never was a pulmonary examination of Paldino. The trial court further determined that if in fact a pulmonary evaluation were medically required, then, from the evidence presented, the board could easily have concluded that Levinson "failed 'to take proper steps to diagnose and treat Andrea Paldino's bronchitis during February and March, 1982.' "[4] The trial court then posed the question to be whether there was evidence in the record that a pulmonary examination was required as a proper step to diagnose and treat the bronchitis. The board had concluded from its own experience that such an examination was required.

In sustaining Levinson's appeal, the trial court acknowledged that *Jaffe* v. *Department of Health,* 135 Conn. 339, 348–50, 64 A.2d 330 (1949), and *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 88–91, 411 A.2d 42 (1979), stand for the proposition that, since medical examining boards are made up exclusively of professionals in the field, the board itself is expert and no expert opinion is necessary. The trial court, however, questioned the continued viability of those two cases in the light of Public Acts 1977, No. 77-614, § 362, effective January 1, 1979 (now General Statutes § 20-25), which substituted for the previous

---

[4] The record does not disclose that either the board, any counsel or the court raised the obvious question involved in charging a chiropractor with negligence in failure to diagnose and treat bronchitis, a purely medical condition. We take the case as the parties treated it.

board of three "practicing chiropractors" a board consisting of three members "one of whom shall be a public member."[5] The trial court concluded that, insofar as they hold that all board members are qualified to pass upon questions of professional conduct and competence, *Jaffe* and *Leib* were eviscerated by the change in composition of the board mandated by Public Acts 1977, No. 77-614.[6]

With regard to Weiss-Levinson, the trial court concluded that the evidence was clearly sufficient to enable the board to find that on February 5 and 8, 1982, Weiss-Levinson practiced chiropractic on Paldino when she was not then licensed to do so. Accordingly, the trial court dismissed her appeal. The appeals to this court followed.

The board, on Levinson's appeal, made the following claims: "1. Whether the trial court erred in determining that the decision of the State Board of Chiropractic Examiners was not supported by substantial evidence, due to the absence of supporting expert testimony?

---

[5] Public Acts 1988, No. 88-248, § 6, increased the number of members on the board from three to seven, requiring four instead of two members to be practicing chiropractors and increasing the number of public members from one to three.

[6] The trial court did not rule on the appeal concerning the third count against Levinson. In response to a motion for articulation filed by the defendants the court also found error in the board's decision against Levinson on the third count for the same reasons found in considering the first count. The defendants also sought articulation as to whether the court found error in the board's conclusion that Levinson had committed the offense alleged in the first count by relying on the results of an examination conducted by an unlicensed person. The court responded that it had found such error. It further stated that the board's decision relied solely on the concept that if a chiropractor relies on a record of examination or x-rays taken by an unlicensed person that chiropractor is acting either incompetently or negligently. The court concluded that in the absence of evidence as to the standard of care in this regard the board could not rely on its own experience to arrive at a conclusion of negligence. The court decided, therefore, that there was no factual basis for the conclusion discussed.

"2. Whether the trial court erred in determining that the passage of Public Act 77-614, providing for public members on boards, created the need for expert testimony in board proceedings?

"3. Whether the trial court erred in sustaining the plaintiff's appeal without considering each reason for the Board's decision?"[7]

We will consider issues one and two as raising the single principal issue of whether expert testimony is necessary in licensing board disciplinary proceedings, an issue common to both appeals.

Levinson phrased the issues as follows:

"1. Did the Board improperly reject uncontroverted expert testimony?

"2. Did the Board improperly fail to notify the plaintiff of official notice taken of facts?

"3. Did the Board find sufficient facts to support its conclusions?

"4. Did the trial court err in determining that the notice of charges was adequate?

"5. Did the Board improperly consider irrelevant and prejudicial testimony?

"6. Was the Board improperly constituted, without the designation of a public member?"

We note that paragraphs 1, 3, 4, 5 and 6 should properly be raised as alternate grounds for sustaining the judgment of the court pursuant to Practice Book § 4013. In view of the defendants' failure to object to the plaintiffs' failure to follow Practice Book § 4013,

---

[7] We find the plaintiffs' claim that the board admitted irrelevant and prejudicial evidence to be merely a rehashing of the claims concerning inadequate notice and, therefore, do not give this claim independent consideration.

we will consider these issues. In view of our disposition of the case we will not consider claims one and five.

On her cross appeal, Weiss-Levinson briefed the following issues:

"1. Did the Court err in determining that the Board's decision was supported by facts set forth in the record?

"2. Did the trial court err in determining that the Board did not officially notice facts without informing Dr. Weiss-Levinson, in violation of Connecticut General Statutes Section 4-178 (4)?

"3. Did the defendant Board consider irrelevant and prejudicial evidence?

"4. Did the trial court err in determining that the notice of charges was adequate?

"5. Was the Board improperly constituted, without designation of a public member?"

In her reply brief on the cross appeal, Weiss-Levinson raised an additional issue, i.e., whether the board improperly defined the practice of chiropractic.

Neither the plaintiffs nor the defendants have placed their various claims within the statutory framework for appeals under the Uniform Administrative Procedure Act. Before considering the issues in this case we note certain well established principles concerning our standard of review.

"The standard of judicial review of administrative agency rulings is well established. [General Statutes §] 4-183 (g) permits modification or reversal of an agency's decision 'if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon

unlawful procedure; (4) affected by other error or law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. General Statutes § 4-183 (g); *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980); *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.,* 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk,* 167 Conn. 161, 355 A.2d 25 (1974).

"On the other hand, it is the function of the courts to expound and apply governing principles of law. *N.L.R.B.* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.,* 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers,* 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra; *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39,425 A.2d 581 (1979)." *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717–18, 546 A.2d 830 (1988).

# I

## Whether Expert Testimony is Required in Disciplinary Proceedings Before State Licensing Boards

Both Levinson on the board's appeal, and Weiss-Levinson on the cross appeal, raise the above issue that boils down to the question of whether *Jaffe* v. *Department of Health,* supra, was undercut by Public Acts 1977, No. 77-614, which substituted a public member for one of three practicing chiropractors previously making up the board of chiropractic examiners.

In *Jaffe,* the plaintiff appealed to the Superior Court from the decision by the state medical examining board recommending to the department of health that his license to practice medicine be revoked. From the court's decision sustaining the action of the board and the resultant revocation, he appealed to this court. The plaintiff was charged before the board with treating a patient " 'in a fraudulent, dishonorable, unprofessional and incompetent manner.' " Id., 341. The board heard testimony concerning Jaffe's treatment and billing of the patient involved, and made detailed findings of facts found and reached conclusions based on the evidence before it. Id. The board concluded that Jaffe's charge to the patient was excessive, that his conduct was not compatible with the standards of medical professional conduct and that he was incompetent. Id., 342. The plaintiff claimed that the decision of the board involved certain conclusions that no evidence offered at the hearing supported, but that "the board reached upon the basis of its own understanding of the obligations of the plaintiff as a medical practitioner in this state." Id., 343. In sustaining the trial court's judgment, while we recognized the general rule that the ultimate test of the admissibility of opinion evidence

is whether it will aid the trier in arriving at his decision, we stated that "[t]he only testimony which could be offered before the board to support these conclusions would be the opinions of expert witnesses, and these opinions would merely serve the purpose of enlightening the board so that it could more justly arrive at its own decision upon the issues." Id., 347. We noted that the medical examining board consisted of five physicians practicing in this state, each of whom was recommended by the Connecticut Medical Society and appointed by the governor. Id., 348. "In providing this method of appointment the legislature undoubtedly intended that the membership of the board should consist of men fitted by training and experience to perform the duties and responsibilities imposed upon it. We would presume—even if we did not know—that the men composing the board were themselves qualified to decide whether certain conduct of a physician or surgeon so derogated from professional standards as unreasonably to jeopardize the interests of the public; and upon that basis they were entitled to act." Id., 348–49.

We concluded that "[e]xpert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have had little, if any, effect in bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent. With the facts of that conduct before it, the board was competent to determine such questions without hearing expert opinion evidence." Id., 349. We added that the person under charges had the right to offer expert opinion at the hearing which the board would be obliged to consider in arriving at its conclusions. Id., 350.

Levinson claims that the adoption of Public Acts 1977, No. 77-614, § 346 (now § 19a-8), vitiated the *Jaffe* rationale and requires the presentation of expert testimony before a medical examining board to determine the standard of care and deviations therefrom. He claims that the crux of *Jaffe* was that the board was composed solely of experts. He also stresses legislative history pointing out the importance of the placement of public members on the regulatory boards. Assuming, arguendo, the validity of these two arguments, they do not in any way furnish guidance with respect to the issue we are considering. In *Jaffe,* we decided that the *board* was competent to decide issues of professional conduct without expert testimony. We decided *Jaffe* on the basis of the situation as it then existed. We decline to read into that case a requirement that such a result was dependent on the board's exclusive professional membership. Every board and commission identified in Public Acts 1977, No. 77-614, § 346, consists of members a majority of whom are experts in the field.

The case of *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429 A.2d 910 (1980), does not support the trial court's decision concerning the lack of continuing validity of *Jaffe.* In *Feinson,* the plaintiff property owner appealed from the defendant commission's denial of his application for permission to place fill on part of his property that had been designated an inland wetland. The only evidence before the commission was the technical report and testimony of the plaintiff's engineer. Id., 423. The commission made detailed technical findings adverse to the plaintiff. We said that the appeal on the merits turned on whether there was sufficient evidence on the record as a whole to support the decision of the commission. We found that the commission's discussion leading to the denial of the application turned on the concern of a lay member of the commission, who was not an engineer, about the pos-

sibility of septic effluent flowing into surface waters. Id., 426–27. The question before us was whether, on a subject as technically sophisticated and complex as pollution control, commissioners who have not been shown to have expertise in this area may rely on their own knowledge, without more, in deciding to deny a license to conduct a regulated activity. We agreed with the trial court that the record did not disclose sufficient reliable evidence to sustain the action taken by the commission. Id., 427. In *Feinson,* however, *none* of the members of the commission had technical expertise. It was on this basis that we expressly distinguished *Jaffe.* Id., 428. Contrarily, in the present case, a majority of the board were experts, and the board that heard the case consisted entirely of two chiropractors.

We conclude that the rationale of *Jaffe* survives the addition of a public member to the board. As long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rely on its own expertise in evaluating charges against persons licensed by the board and the requisite standard of care by which to judge such cases. Our view of this matter is supported by *Kundrat* v. *Dental Council & Examining Board,* 67 Pa. Commw. 341, 447 A.2d 355 (1982). In upholding the revocation of the plaintiff's license to practice dentistry, the *Kundrat* court found expert evidence to be unnecessary before the board. Id., 358. The state dental council and examining board consisted of the president of the Pennsylvania state dental society, the secretary of health, the commissioner of professional and occupational affairs and nine persons, at least two of whom represented the public at large, and one of whom was required to be a dental hygienist. Id., 358 n.4. The presence of nonexpert members of the dental council was not an issue in the case. The court, however, implicitly ruled on the expert adequacy of the

council itself when it stated that "[t]he membership of the State Dental Council and Examining Board includes the president of the Pennsylvania State Dental Society, the Commissioner of Professional and Occupational Affairs, and a number of dentists who have been engaged in the practice of dentistry in this Commonwealth for at least ten years. We can logically assume that *the dentists sitting on the Board which heard the case are knowledgeable and experienced in the field of dental medicine and the procedures connected therewith.* As such, they are permitted to draw on their expertise in ruling on matters which come before them." (Emphasis added.) Id., 358. A similar implicit ruling is found in *Arlen* v. *State,* 61 Ohio St. 2d 168, 173, 399 N.E.2d 1251 (1980), wherein the Supreme Court of Ohio cited *Jaffe* in following the *Jaffe* rule. The Ohio court stated: "It is provided in [Ohio Revised Code] 4731.01 that the State Medical Board consist of ten members, eight of whom shall be physicians and surgeons licensed to practice in Ohio, seven of whom must hold the degree of doctor of medicine, one the degree of doctor of podiatric medicine, and one the degree of doctor of osteopathy. The board members are selected by the Governor, with the advice and consent of the Senate. This distinguished medical board is capable of interpreting technical requirements of the medical field and is quite capable of determining when certain conduct falls below a reasonable standard of medical care." Id.

Further support for our position is found in General Statutes § 4-178 (4) of the Uniform Administrative Procedure Act (UAPA), which provides that any agency may use its experience, technical competence and specialized knowledge in the evaluation of the evidence in contested cases. This procedural provision applies to all agencies and agency proceedings not expressly exempted in the UAPA. General Statutes § 4-185. It is presumed that the legislature was aware of General

Statutes § 4-178 (4) when it enacted General Statutes § 19a-8. See *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 425, 209 A.2d 674 (1965).

The plaintiffs rely principally on the claimed "evisceration" of *Jaffe* by the addition of a public member to the board. In view of our rejection of this claim, we must next proceed to weigh the plaintiffs' numerous substantive attacks on the *Jaffe* rationale.

There is a split of authority in other jurisdictions as to the requirement of expert testimony in administrative licensing cases. The plaintiffs cite cases requiring such expert testimony. See *Hake* v. *State Medical Board,* 237 Ark. 506, 374 S.W.2d 173 (1964); *Franz* v. *Board of Medical Quality Assurance,* 31 Cal. 3d 124, 642 P.2d 792, 181 Cal. Rptr. 732 (1982); *McKay* v. *Board of Medical Examiners,* 103 Colo. 305, 86 P.2d 232 (1938); *Smith* v. *Deptartment of Registration & Education,* 412 Ill. 332, 106 N.E.2d 722 (1952); *Medical Licensing Board* v. *Ward,* 449 N.E.2d 1129 (Ind. App. 1983); *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 418 N.Ed.2d 1236 (1981); *Board of Optometrists* v. *Nemitz,* 21 N.J. Super. 18, 90 A.2d 740 (1952); *In re Dailey* v. *Board of Dental Examiners,* 309 N.C. 710, 309 S.E.2d 219 (1983); *Appeal of Schramm,* 414 N.W.2d 31 (S.D. 1987); *Dotson* v. *Board of Medical Examiners,* 612 S.W.2d 921 (Tex. 1981); *Gilbert* v. *State,* 119 Wis. 2d 168, 349 N.W.2d 68 (1984).

The board counters with the following cases. *Ferguson* v. *Hamrick,* 388 So. 2d 981 (Ala. 1980); *Croft* v. *Board of Dental Examiners,* 157 Ariz. 203, 755 P.2d 1191 (Ariz. App. 1988); *Gaddy* v. *Board of Registration for Healing Arts,* 397 S.W.2d 347 (Mo. App. 1965); *Appeal of Beyer,* 122 N.H. 934, 453 A.2d 834 (1982); *Farlow* v. *Board of Chiropractic Examiners,* 76 N.C. App. 202, 332 S.E.2d 696 (1985); *Arlen* v. *State,* supra;

*Kundrat* v. *Dental Council & Examining Board,* supra; *Davidson* v. *Department of Licensing,* 33 Wash. App. 783, 657 P.2d 810 (1983). All of these cases follow the *Jaffe* rule and some of them specifically cite *Jaffe* as authority for the position adopted.

The plaintiffs first claim that expert testimony is required because the judicial review to which they are entitled is limited to the record. They rely generally on the authority cited above and specifically on *In re Dailey* v. *Board of Dental Examiners,* supra, 723–24, and *Franz* v. *Board of Medical Quality Assurance,* supra, 138–39. They also point to the provision in General Statutes § 4-177 (e) (2) that the record in a contested case shall include "evidence received or considered." Both of these arguments beg the question. Concerning the out-of-state authority cited, all of the cases fall on the side of requiring expert evidence, contra to the *Jaffe* decision. In addition, the reference to the UAPA provision that the record shall include "evidence received or considered" does not alter or affect the *Jaffe* ruling concerning the lack of expert evidence on the pertinent standard of care.

Most significantly, the very argument the plaintiffs now make was convincingly answered in *Jaffe,* wherein we stated: "The difficulty with this reasoning [that the reviewing court cannot be left to speculate on what was in the minds of the individual board members as constituting improper diagnosis or treatment] is that, as opinion evidence offered before the board would in no way be binding upon it and the ultimate decision would be based upon the board's own conclusions, the evidence would not with any certainty show the basis upon which it finally reached its decision. The only way the reasons which actuated it in its ruling can be definitely placed on record is by such a statement as that embodied in this case . . . . The notice of charges against

a practitioner to which he is to answer before the board should state them with sufficient particularity so that he may be fairly apprised of the nature of the offense with which he is charged. *If this is done, and the board in its minutes has stated with reasonable certainty the conclusions it has reached, the court on appeal can know the basis upon which it acted.*" (Emphasis added.) *Jaffe* v. *Department of Health,* supra, 352.

The plaintiffs attempt to blunt our statement in *Jaffe* by pointing out that *Jaffe* relied on three factors, the first and third of which they claim do not exist in this case: (1) specificity in the notice of charges; id.; (2) a clear statement by the board of its conclusions; and (3) the ability of the trial court to hear new evidence as to the facts if the record did not adequately disclose the basis of the board's action. Id., 354–55. As discussed below, we are not persuaded that the notices in this case lacked sufficient specificity. The plaintiffs stress, however, our statement in *Jaffe* that "[e]xpert evidence may be offered before the court by the board in support of its conclusions and by the doctor in an attack upon them, and it is then for the court to determine the appeal upon the evidence before it." Id., 355. They argue that the lack of a comparable right to present expert testimony in an appeal under the UAPA vitiates our ruling in *Jaffe* on this issue. Such a claim overlooks General Statutes § 4-183 (e), which provides: "If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and

shall file that evidence and any modifications, new findings, or decisions with the reviewing court."

We commented in *Leib* v. *Board of Examiners for Nursing,* supra, 92, on a related section of § 4-183 as follows: "[The plaintiff] also claims error in the denial of her motions to present additional evidence and for disclosure and production. General Statutes § 4-183 (f) [now § 4-183 (i)] provides: 'The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.' 'An appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear evidence.' *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 69, 157 A.2d 103 (1959)."

The plaintiffs next claim that expert testimony was required to allow the doctors to cross-examine witnesses and present rebuttal evidence. This claim is based upon the following sections of the UAPA: (1) General Statutes § 4-177 (c), which provides that an "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved," and (2) General Statutes § 4-178 (3), which provides that in a contested case "a party may conduct cross-examinations required for a full and true disclosure of the facts." The plaintiffs argue that on the issue of the standard of care for chiropractors and the meaning of the practice of chiropractic, the board must have relied on information other than that presented. They claim, as part of the same issue, that their state and federal due process rights were violated by the lack of

expert witnesses to cross-examine. We consider both of these arguments to be little more than oblique attacks on the basic *Jaffe* rationale.

We look first to the plaintiffs' claim concerning the lack of expert witnesses to cross-examine. It is true that certain of the cases cited above as comprising the anti-*Jaffe* camp have relied principally or partially on the conclusion that such a lack is a violation of analogous administrative procedure acts. *Jaffe* met this claim head-on when it declared that the only evidence that could be presented on the claimed violations by *Jaffe* of the standard of care of a physician would be the opinions of expert witnesses. *Jaffe* v. *State Department of Health,* supra, 347. As we noted above, because the board itself was expert, "[e]xpert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have had little, if any, effect in bringing it to a decision at variance with its own conclusion" as to a practitioner's competence. Id., 349. Thus the significance of a claimed right of cross-examination under these circumstances is diluted. The provision in General Statutes § 4-178 (4) that in a contested case "[t]he agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence" further diminishes this claim. See *Croft* v. *Board of Dental Examiners,* supra, 209; *Davidson* v. *State,* supra, 786.

The plaintiffs' due process claim does not merit repetitive analysis. Suffice it to say "the procedures which the UAPA requires for 'contested cases' . . . exceed the minimal procedural safeguards mandated by the due process clause; *Haymes* v. *Regan,* 525 F.2d 540 (2d Cir. [1975]); *La Bonte* v. *Gates,* 406 F. Sup. 1227 (D. Conn. [1976]) . . . ." *Taylor* v. *Robinson,* 171 Conn. 691, 698–99, 372 A.2d 102 (1976).

The plaintiffs' next claim is that in the absence of expert testimony the board was required to take official notice and to notify the doctors. This claim relies on General Statutes § 4-178 (4), which provides in part: "[N]otice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed." Once again, the plaintiffs cite out-of-state authority from the anti-*Jaffe* contingent. If *Jaffe* were not still alive and kicking this facet of the plaintiffs' argument would be more persuasive. We agree with Professor Gellhorn's analysis: "[I]n administrative adjudication, official notice is frequently confused with the process of decision-making. In reaching a conclusion, the examiner or agency may rely on its special skills, whether they include particular expertise in engineering, economics, medicine, or electricity, just as a judge may freely use his legal skills in reading statutes and applying decided cases in the preparation of his opinion. But such evaluations are not within the concept of official notice. Official notice is concerned with the *process of proof,* not with the *evaluation of evidence.* The difference between an administrative tribunal's use of non-record information included in its expert knowledge, as a substitute for evidence or notice, and its application of its background in evaluating and drawing conclusions from the evidence that is in the record, is primarily a difference of degree rather than of kind. In principle, reliance upon the examiner's knowledge in the process of proof is permissible only within the confines of official notice, whereas the examiner's use of his experience in evaluating 'proof' that has been

offered is not only unavoidable but, indeed, desirable. The troublesome problem, as with most questions of law, is that a fine line cannot be drawn with precision." (Emphasis in original.) E. Gellhorn, "Rules of Evidence and Official Notice in Formal Administrative Hearings, 1971 Duke L.J. 1, 43 (1971).

We conclude that *Jaffe* is good law in Connecticut today and that expert opinion as to the competency of Levinson's actions or the practice of chiropractic by Weiss-Levinson was not required in the disciplinary proceedings before the board.

Concerning the adequacy of the factual basis to support the board's decision against him, Levinson claims that the court ruled that the charges in both the first and third counts against him lacked a factual foundation. This statement is misleading in its implications. The trial court's rulings were clearly based on its conclusion, which we have found to be erroneous, that due to the weakening of *Jaffe* by the addition of a public member to the board, the board could no longer rely on its own knowledge and experience to arrive at a conclusion of negligence. This claim requires no further discussion.

## II

### THE ADEQUACY OF THE NOTICE OF CHARGES TO BOTH LEVINSON AND WEISS-LEVINSON

Both of the plaintiffs claim that the notices of charges against them were inadequate in that they lacked specificity. They make this claim under the UAPA as well as both state and federal due process clauses. The trial court found that each notice contained "a short and plain statement of the matters asserted" as required by General Statutes § 4-177 (b) (4). The court erroneously cited § 4-177 concerning the notice required in this case. That section describes the general notice

required in all contested cases by providing in subsection (a) that "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." General Statutes § 4-182 (a) provides that "[w]hen the grant, denial or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply." Subsection (c) of § 4-182, however, specifically states that "[n]o revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action . . . ."

We held in *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 47 n.2, 327 A.2d 588 (1973), that "[u]nder § 4-182 (a), when the grant, denial or renewal of a license is required to be preceded by notice and a hearing, the notice must, under § 4-177 (b) (4), contain 'a short and plain statement of the matters asserted.' Section 4-182 (c), however, requires notice and hearing for the revocation, suspension, annulment or withdrawal of any license, and the notice must inform the licensee 'of facts or conduct which warrant the intended action.' The stricter notice requirements for the latter type of proceeding are a function of the more compelling private interest involved; because of this interest, the demands of due process are greater than they are in the former type of proceeding." We further concluded: "The purpose of the hearing required by [General Statutes] § 14-64 [empowering the commissioner of motor vehicles to suspend or revoke car dealers' licenses] is to enable the commissioner to determine whether a licensee accused of misconduct under a statute pertaining to his license has, in fact, violated the statute. The effect of the procedure, if a violation is found, is revocation or suspension of the license, a valuable property right on which

the licensee and many people may depend for their livelihood. In such circumstances, due process requires that the notice given must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law." Id., 46–47. Further, we noted in *Jaffe* v. *Department of Health,* supra, 352, that "[t]he notice of charges against a practitioner to which he is to answer before the board should state them with sufficient particularity so that he may be fairly apprised of the nature of the offense with which he is charged. If this is done, and the board in its minutes has stated with reasonable certainty the conclusions it has reached, the court on appeal can know the basis upon which it acted." It is in the light of these well established statutory and due process requirements of adequate notice that we examine the plaintiffs' claims to determine if there is a variance between the charges made and conclusions reached by the board which is sufficiently substantial to violate the rights of either plaintiff.

The first count against Levinson charged: "During February and March of 1982 David Levinson negligently or incompetently failed to properly diagnose Andrea Paldino which conduct is a violation of Connecticut General Statutes § 20-29." Levinson claims that he was only charged with failure to diagnose Paladino properly while the board's findings have nothing to do with improper diagnosis. In its decision, the board concluded that "[a] patient complaining of bronchitis is entitled to have an examination to evaluate bronchitis, and failure to do so represents negligence on the part of the doctor." The board also determined that by relying on the results of an examination by an unlicensed person (Weiss-Levinson), Levinson "negligently failed to diagnose or treat Andrea Paldino properly." We are unpersuaded that a variance exists

between the charge and the finding on the first count. It is true that the board found that Levinson failed to diagnose or *treat* Paldino properly when the question of treatment was not included in the charge. The erroneous finding of negligent treatment was, however, mere surplusage which in no way lessens the soundness of the board's overall conclusions.

Levinson can claim no relief from the court unless he can show that he was substantially prejudiced by the board's error. General Statutes § 4-183 (g); *Lawrence* v. *Koslowski,* 171 Conn. 705, 713–14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). This the plaintiff has not done. We bear in mind the keystone of administrative appeals, i.e., the court shall not substitute its judgment for that of the agency as to questions of fact. General Statutes § 4-183 (g). Levinson's claim of variance as to the first count must fail.

Levinson's claim concerning the third count is even more tenuous. The third count charged: "On or about the 5th of February 1982 David Levinson negligently or incompetently diagnosed and/or treated Andrea Paldino by failing to take proper x-rays which conduct is a violation of Connecticut General Statutes § 20-29." Levinson argues that the notice was inadequate because he was not notified that "proper x-rays" meant "thorough chest x-rays." Once again, Levinson has shown no substantial prejudice under § 4-183 (g) of the UAPA.

Further, the plaintiffs never brought an application for "a more definite and detailed statement" of the charges as permitted under General Statutes § 4-177 (b) (4). The plaintiffs' failure to do so constituted a waiver of their right to question the sufficiency of the notice of charges. See *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 95–96, 448 A.2d 210 (1982).

Weiss-Levinson's arguments about inadequate notice to her suffer the same infirmities as do Levinson's. She was charged in the first two counts with having "practiced chiropractic" on Andrea Paldino in violation of General Statutes §§ 20-27, 20-29 and 20-33. Weiss-Levinson argues that the board's findings went well beyond these charges. The contested findings of the board are as follows: "Debra Weiss identified herself to Andrea Paldino as a doctor of chiropractic and represented herself as such. At no point did Debra Weiss indicate that she was other than a licensed professional. Such activities as diagnosis, x-ray interpretation and the performance of a kinesiological examination fall within the practice of chiropractic. The examination performed by Debra Weiss on Ms. Paldino was part of the diagnostic process that would typically be employed by a chiropractor. Chiropractic treatment includes the steps which lead to the actual adjustments. . . .

"This Board finds that, as stated in the First and Second Counts against her, Debra Weiss Levinson violated [General Statutes §§] 20-27 and 20-33 by practicing chiropractic on at least two occasions in February 1982, despite having not yet obtained a Connecticut license." The board also concluded that Weiss-Levinson was "guilty of violating § 20-33 solely for her attempts to practice chiropractic without a license . . . ."

Weiss-Levinson's claims concerning inadequate notice fall into two categories. The first concerns the board's construction of the term "practice of chiropractic." General Statutes § 20-24 (a) defines the "practice of chiropractic" as the "science of adjustment, manipulation and treatment of the human body" in which certain structures "are adjusted, manipulated or treated." Weiss-Levinson claims two instances of improper findings by the board: (1) the conclusion that "[c]hiropractic treatment includes the steps which lead to the actual

adjustments," and (2) the conclusion that her activities fell within the definition of "chiropractic practice" because these activities were "part of the diagnostic process that would typically be employed by a chiropractor." Weiss-Levinson argues that neither of these findings were reflected in the notice of charges. Concerning both claims, the construction of the scope of practice under a licensing statute is "purely a question of law." *Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 718, 546 A.2d 830 (1988). The board's conclusions accord not only with common sense, but with logic and human experience. These findings are exactly the type of conclusions that we have previously determined in this case are properly subject to the board's expertise and experience in chiropractic.

Concerning Weiss-Levinson's second complaint of inadequate notice, she relies on the board's statement that she represented herself as a doctor of chiropractic. This claim, however, flies in the face of the board's more specific finding that she violated §§ 20-27 and 20-33 on two occasions by practicing chiropractic without a license, and that she violated § 20-33 "solely for her attempts to practice chiropractic without a license." The offending statement, at worst, was again surplusage, which Weiss-Levinson has completely failed to show substantially prejudiced her in any way.

The notice of charges to both plaintiffs violated neither their statutory nor due process rights.[8]

### III

#### Was the Board's Action Jurisdictionally Defective Because the Board was Improperly Constituted?

The plaintiffs' final claim is that the board was improperly constituted. They claim that the lack of a

---

[8] In view of our disposition of the case we do not reach the defendants' claimed issue three.

public member in violation of General Statutes § 19a-8, which states that not less than one third of the members of any of the boards listed in that statute shall be public members, renders the board's hearing of this case jurisdictionally defective. They cite no authority for this proposition. Normally, under these circumstances we would consider such a claim no further. Since, however, such a claim may cloud further proceedings before this board or others listed in § 19a-8, we will resolve the matter.

The board admits that at the time of the proceedings in this case the public membership was not filled. "The almost universally accepted common-law rule is . . . [that] a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." *FTC* v. *Flotill Products, Inc.,* 389 U.S, 179, 183, 88 S. Ct. 401, 19 L. Ed. 2d 398 (1967). "In the absence of legislative restriction, the general rule is that a committee or commission performing such functions as those exercised by the zoning commission in this case can take valid action at a meeting of which all members have proper notice and at which a majority are present." *Strain* v. *Mims,* 123 Conn. 275, 281, 193 A. 754 (1937), and cases therein cited. There is no provision in chapter 372 of the General Statutes, which creates the board of chiropractic examiners, that abrogates the common law rule. Further, "[w]ords purporting to give a joint authority to several persons shall be construed as giving authority to a majority of them"; General Statutes § 1-1 (h); and "[t]he rule is that all bodies charged with the performance of public duties continue to function though a vacancy exists." *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 87, 130 A. 289 (1925). A board may act as long as there exists a quorum equal to a majority of all the actual members of the board. *Lee* v. *Board of Education,* 181 Conn. 69, 83–84, 434 A.2d 333 (1980); *U.S.*

*Vision, Inc.* v. *Board of Examiners for Opticians,* 15 Conn. App. 205, 213, 545 A.2d 565 (1988) ("[t]wo members of the board constitute a majority and have all of the authority that is granted to a three member board"). The failure of the governor to appoint lay members to the state optometry board did not deprive the board of the power to act where a quorum equal to a majority of members of the board existed during the transaction of the business involved. *Serian* v. *State,* 297 S.E.2d 889, 893 (W. Va. 1982).

We find error in the trial court's ruling sustaining Levinson's appeal. He did not establish sufficient grounds to sustain the appeal under the applicable provisions of the UAPA. We find no error in the trial court's dismissal of Weiss-Levinson's appeal. She also failed to establish sufficient grounds for appeal under the UAPA.

There is error on the appeal, the judgment in favor of the named plaintiff is set aside and the case is remanded with direction to render judgment dismissing the appeal as to the named plaintiff; there is no error on the cross appeal.

In this opinion PETERS, C. J., CALLAHAN and GLASS Js., concurred.

COVELLO, J., concurring. I disagree with that portion of the majority opinion that states "[t]he failure . . . to appoint lay members . . . did not deprive the board of the power to act where a quorum equal to a majority of members of the board existed during the transaction of the business involved." In *Dubaldo* v. *Department of Consumer Protection,* 209 Conn. 719, 552 A.2d 813 (1989), we held that a decision of the electrical examining board was without authority because its membership did not include two statutorily required persons who were engaged in electrical work. The unqualified language in the majority opinion in this case

seems to me to imply that carefully crafted, legislative enactments that require certain numbers of board members to have special skills or common characteristics such as the "public member"[1] requirement involved here, may be vitiated simply by never filling those seats that require the members to have special skills or characteristics. I submit that such a course of conduct would be contrary to our holding in *Dubaldo*. Since there is no evidence that this was in fact the case here, I concur with the result reached by the majority.

[1] General Statutes § 19a-8 provides: "Not less than one-third of the members of each board and commission identified in subsection (b) of section 19a-14 shall be public members. As used in this section and in the sections listed in said subsection, 'public member' means an elector of the state who has no substantial financial interest in, is not employed in or by, and is not professionally affiliated with, any industry, profession, occupation, trade or institution regulated or licensed by the board or commission to which he or she is appointed, and who has had no professional affiliation with any such industry, profession, occupation, trade or institution for three years preceding his appointment to the board or commission."