[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, Robert E. Chain, has filed an administrative appeal from the decision of the defendant, the State of Connecticut Department of Insurance (hereinafter "the Department"), finding that he violated an Order of Supervision and imposing a fine. Argument of the appeal took place on June 5, 2000. For the reasons stated below, the court reverses the decision of the Department and orders the entry of judgment in favor of Chain.
BACKGROUND OF THE CASE
The administrative record reveals the following background of the case. Chain was licensed by the Department as an insurance producer and was a principal shareholder and the treasurer and chief executive officer of First Connecticut Life Insurance Company (hereinafter "the company" or "FCLIC"). As a result of an official examination commencing in December, 1995, the Department concluded that the company was in financial jeopardy and that it should be placed under an "Order of Supervision." Sometime between December, 1995 and March 18, 1996, the Department had required that the company transfer certain high grade bonds owned by the company back to its account at Fleet Bank after the company had originally transferred them to the Smith Barney Company.
At 11:00 a.m on March 18 and effective at that time, the Department issued an Order of Supervision (hereinafter "the Order") concerning the company. In pertinent part, the Order provided:
 First Connecticut is ordered . . . not to do any of the following things, during the period of supervision, without the prior approval of the Commissioner or the Supervisor:
 A. Dispose of, convey or encumber any of its assets or its business in force;
. . . .
E. Transfer any of its property;
F. Incur any debt, obligation or liability. . . .
Sometime during the morning or early afternoon on March 18, Chain sent a letter to Fleet Bank directing it to transfer some of the bonds in question, totaling $1,200,000 in value, as well as about $100,000 in cash. At the same time, Chain sent a letter to Smith Barney directing it to "exercise our margin account" at maximum value concerning the CT Page 6975 securities being sent by Fleet Bank and place the proceeds, along with the $100,000, in the company's operating account. By "exercise our margin account," Chain meant that Smith Barney should retain the bonds as collateral for a loan to the company.
During the afternoon of the 18th but apparently after Chain had sent out these letters, the department served the Order on the general counsel for the company.[1] Clyde Hayden, the Department officer appointed to be the Supervisor of the company, met with the general counsel, explained the Order, and expressed particular concern that the bonds in question remain with the company in order to insure that the company could keep operating.
Chain was not present at that meeting. Chain first learned about the Order by way of a phone call with the general counsel at about 4:00 p.m. on that day. Chain met with Hayden on the next day, March 19, 1996. At that meeting, Hayden went over the Order and stated the importance of obtaining Department approval before the company transferred the bonds in question. Chain did not inform Hayden of the pending transfer of the bonds.
The bonds were in fact transferred to the company account at Smith Barney and used for a margin loan on March 19. On March 19 and 20, Smith Barney transferred approximately $1,143,000 in funds to company operating accounts at Fleet Bank. At some later point, these funds were used to repay a line of credit with Fleet Bank.
On May 27, 1997, the Department issued an eight count complaint against Chain and Capital Benefits Plans, Inc., a corporate owner of the company, seeking revocation or suspension of insurance licenses and imposition of fines. Capital Benefits entered into a consent decree. A hearing on the complaint against Chain took place on December 16, 1998 before a hearing officer. The Department proceeded only on the fourth count of the complaint. The critical allegations of the fourth count were as follows:
 11. Within two days of FCLIC having been placed under the Order of Supervision, Chain caused FCLIC on March 19 and 20 to transfer bonds owned by FCLIC from an account at Fleet Bank NA ("Fleet") to a margin account at Smith Barney Inc. where Chain caused these bonds to be pledged as collateral for a loan of $1,143,000.
 12. Approval was not requested or received from Commissioner Reider or the Supervisor for these transactions. CT Page 6976
 13. The aforementioned alleged actions constituted a violation of Commissioner Reider's March 18, 1996 Order of Supervision.
 14. The aforementioned alleged actions demonstrate a lack of trustworthiness and financial responsibility required for maintaining a producer license pursuant to Conn. Gen. Stat. section 38a-769 and constitute cause for the suspension or revocation of Chain's producer license and/or imposition of a fine pursuant to Conn. Gen. Stat. section 38a-774 (a).
At some point after the hearing, and most probably on or about January 31, 1998, Chain's license as an insurance producer expired and Chain failed to renew it. On March 24, 1999, the hearing officer issued an eleven page proposed decision finding that Chain violated the Order and imposing a fine of $7,500.[2] The critical part of the decision stated:
 The prohibited action, started by the Respondent's letters [on March 18] authorizing the transfer and encumbrance of the bonds, was not complete until the unauthorized transactions that the Department complained of occurred, on March 19 and 20, 1996. Consequently, the violation of the Order did not occur until the offending transaction was actually completed, namely when the bonds, having been transferred to Smith Barney, were used as collateral for a loan. It is at that time that assets belonging to FCLIC were encumbered and a loan and obligation was incurred in violation of the Order and in violation of Section 38a-962d.
The Deputy Insurance Commissioner approved the proposed decision on April 5, 1999. This appeal followed.
DISCUSSION
Judicial review of administrative agency decisions is governed by the Uniform Administrative Procedure Act. See Menillo v. CHRO,47 Conn. App. 325, 331, 703 A.2d 1180 (1997); General Statutes § 4-166
et seq. Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial CT Page 6977 rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of the constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires the court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotations omitted.) Schallenkamp v. DelPonte,229 Conn. 31, 39, 639 A.2d 1018 (1994).
There is no challenge in this case to the agency's findings of basic facts. The issue instead is whether it was reasonable for the Department to conclude that, based on these facts, Chain violated the Order of Supervision. Chain also claims that the Department lacked authority to impose a fine.
The court finds that the hearing officer's conclusion is not reasonable. The record does not establish that Chain took any actions that violated the Order of Supervision. When Chain sent letters to Fleet Bank and Smith Barney on March 18 requesting the transfer of the company's assets, he was legally entitled to do so. The hearing officer expressly failed to find that, at the time when Chain sent the letters, he had notice of the Order or even that the Order had gone into effect. See note 1 supra. Nor did the previous period of examination that had commenced in December, 1995, result in an extant order not to transfer assets out of Fleet Bank a second time. And, as the Department agreed at trial, Chain did not take any actions on March 19 and 20 that violated the Order.
While acknowledging that the record does not establish that any of Chain's actions were in violation of the Order at the time he took them, the Department argues that Chain's actions on March 18 nonetheless set in motion a chain of events that eventually led to a violation of the Order. The flaw in the Department's argument is its focus in a license revocation hearing on results rather than fault. A state license is a "valuable property right on which the licensee and many people may depend for their livelihood." Levinson v. Board of Chiropractic Examiners,
CT Page 6978211 Conn. 508, 534-35, 560 A.2d 403 (1989). Given what is at stake in license revocation and penalty proceedings, some level of fault on the part of the licensee is essential before the agency can impose sanctions. See Vann v. District of Columbia Board of Funeral Directors andEmbalmers, 480 A.2d 688, 692-93 (D.C.App. 1984); Davis v. Missouri RealEstate Commission, 211 S.W.2d 737, 740 (Mo.Ct.App. 1948). The court therefore does not find it reasonable for the Department to revoke a license based on a prohibited result without a prohibited act by the licensee. Thus the fact that Chain sent letters on March 18, before receiving notice of the Order, that resulted in the encumbrance of assets on March 19 and 20, a result prohibited by the Order, does not convert his otherwise legal actions into prohibited ones.
This finding does not mean that the court condones Chain's conduct. The Department's prior examination of the company put Chain on notice that the Department was very concerned about the bonds in question. Chain's act of sending letters out on March 18 just before the arrival of the Order raises the possibility that he was attempting to defeat the Order while it was still technically legal to do so. On March 19, the Department met with Chain, went over the Order, which had already become effective, and stated the importance of obtaining Department approval before the company transferred the bonds in question. For Chain to remain silent at that point about the pending transfer of the bonds, which he did, was to mislead the Department in an apparent breach of his responsibilities as a state licensee and a chief executive officer of a highly regulated company.
The Department, however, did not charge Chain with breach of fiduciary duty or failure to act. The Order prohibited the company from transferring property and incurring obligations, but it did not require Chain to undo or even disclose any transfers that had been legally commenced. The Department's complaint, which in license revocation proceedings must "advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law," (internal quotation marks omitted) Levinson v. Board of ChiropracticExaminers, supra, 211 Conn. 535, alleged that Chain's "actions" on March 19 and 20 caused the bonds to be pledged and therefore constituted a violation of the Order. The complaint did not allege that Chain's failure to disclose prior actions constituted a violation. The Commissioner did not find that Chain did anything wrong on March 19 or 20 but rather found that Chain committed acts on March 18 that resulted in violations on the next two days. Similarly, the Department on appeal disavows any claim that Chain violated the Order by failing to inform the Department of the pending transfers. Thus this court cannot uphold the Department's decision based on Chain's omissions. CT Page 6979
Instead of charging Chain with breach of duty or failure to disclose, the Department charged Chain with violating the Order of Supervision. That he did not do.[3]
CONCLUSION
For the foregoing reasons, this court reverses the decision of the Department and orders the entry of judgment for the plaintiff
CARL J. SCHUMAN JUDGE, SUPERIOR COURT