[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the action of the defendant Connecticut Board of Chiropractic Examiners (hereinafter called the defendant Board) suspending the plaintiff's license to practice chiropractics for a period of one year, and ordering him to pay civil penalties and to comply with certain other orders.
The plaintiff is a chiropractor, licensed by the State of Connecticut, with an office on New Haven Avenue in Milford. He treated Mark Spivey, Cheryl Benham and Richard Benham at various times in 1982 and 1983. Complaints were made about him to the defendant Connecticut Department of Health Services (hereinafter called the defendant CT Page 1018 Department). Thereafter the defendant Department presented the defendant Board with a Statement of Charges issued on May 24, 1985 alleging violation by the plaintiff of Section 20-29
of the General Statutes in 24 Counts and asking that the defendant Board take any disciplinary action concerning the plaintiff's license as it may deem appropriate and consistent with the law. The matter was set down for a hearing before the defendant Board and hearings were held on September 19, 1985, November 14, 1985 and February 27, 1986. Seven witnesses testified, twenty-four exhibits were entered into evidence and a transcript of 533 pages was made. The defendant Board then found against the plaintiff in certain matters and imposed the discipline stated in a Memorandum of Decision mailed to the plaintiff and his attorney on July 29, 1987. This appeal followed. The court allowed the plaintiff to supplement the record made before the defendant Board in certain aspects. Briefs were filed and a hearing held before the court.
Of the 24 counts in the Statement of Charges, the defendant Department withdrew 3 counts, the defendant Board found against the plaintiff on 12 counts, the defendant Board dismissed 8 counts and referred 1 count to another State Department for handling.
The defendant Board, as created by the Legislature, consisted of 3 persons, 2 of whom were chiropractors and 1 was a public member. Section 20-25 of the General Statutes, before it was amended in 1988. The Chairman of the defendant Board was Dr. Marino R. Passero and Dr. Lewis Labbadia was the other chiropractic member. There was a vacancy in that there was no public member on the defendant Board. Dr. Labbadia had made a complaint to the defendant Department about the plaintiff's use of a diagnostic procedure. This procedure ultimately came before the defendant Board in Counts 8, 13, 16 and 17 of the Statement of Charges. When his complaint was filed on October 13, 1983, Dr. Labbadia stated that "I, therefore, must for this matter excuse myself from sitting on the Board of Examiners if this matter is to be decided at a later date" (Exhibit R). Consequently, Dr. Passero conducted the hearings as a Hearing Officer. After the hearings were concluded, Mary Comen was appointed as the public member. She read the record, discussed the matter with Dr. Passero and signed the Memorandum of Decision on July 23, 1987. Dr. Passero had previously signed it on July 10, 1987.
The plaintiff has complained of a large number of matters in the handling of his case before the defendant Board. The court feels there is no way to group these issues but that each one must be dealt with singly in the order in CT Page 1019 which the plaintiff has briefed them.
1.
The plaintiff complains that the defendant Board was improperly constituted in that there was a vacancy on the Board at the time of the hearings.
The Supreme Court has specifically ruled against this claim in the case of Levinson v. Board of Chiropractic Examiners, 211 Conn. 508.
The plaintiff also complains that Dr. Passero was an officer of a professional Society. Section 20-25 of the General Statutes provides in part: "No professional member shall be an elected or appointed officer of a professional society of chiropractors or have been such an officer during the year immediately preceding his appointment." As to this matter Dr. Passero stated (R. p. 210):
 "I am currently the President on the Council of Chiropractic Education. It is not a professional society. It is a quasi governmental, voluntary accrediting agency, approved by the United States Department of Education and is a member of the council on post secondary education.
 There are no members to this other than institutions, colleges as well as a commission on accreditation which accredits college. It is not a trade association, not a professional society, so to speak."
The defendant Board's attorney told the plaintiff's attorney that if he wanted to attack Dr. Passero's statement that it was not a professional society he could do so. The plaintiff was called to testify but did not contest Dr. Passero on that point. No other testimony was offered by the plaintiff concerning the Council of Chiropractic Education. Thus, the only evidence in the case was that the Council was not a professional Society.
The court finds as a fact that the defendant Board was properly constituted.
2.
The plaintiff claims the notice of charges against him were not legally inadequate. CT Page 1020
The plaintiff was served with a statement of charges containing 24 counts. Thereafter he filed a letter seeking clarification of six counts. Answers were provided for only 3 of the 6 counts.
The request concerning Count 14 was not answered. However, this count was dismissed by the defendant Board in its Memorandum of Decision.
The request concerning Count 15 was not answered. However that count was withdrawn at the beginning of the hearing. (R. p. 10).
The remaining question concerning Count 20 asked for the "basis" of the claim. The court finds that the charge was adequately stated and the plaintiff was really asking for the evidence which was the "basis" of the claim. He was not entitled to get that and the defendant Department's refusal to answer the question was not improper.
3.
The plaintiff claims the decision was procedurally deficient in certain aspects.
The plaintiff claims that the defendant Board failed to file a proposal of decision in accord with Section 4-179 of the General Statutes. This statute applies when a majority of the members of the agency who are to render the final decision have not heard the matter or read the record. The Memorandum of Decision was signed by Dr. Passaro and by Mary Comen. Dr. Passaro sat as the Hearing Officer for the 3 days of the hearing and Mary Comen, who was appointed to the defendant Board after the hearings were concluded, certified in the Memorandum of Decision that she "read the record of the proceedings." (R. p. 5).
The plaintiff claims that the decision was not rendered within 90 days of the close of the hearing and filing of the briefs. The hearings were held on September 19, 1985, November 14, 1985 and February 27, 1986. The decision was rendered when it was mailed to the plaintiff and his attorney on July 29, 1987. Thus the decision was not rendered in the time period required by the statute. The defendant Board points out in its brief that if the decision is not timely rendered, under section 4-180 (a)(b) of the General Statutes any party may apply to the Superior Court for an order requiring the agency to render a decision forthwith. The plaintiff did not apply for such an order. The court finds as a fact that the plaintiff waived any defect of a timely CT Page 1021 rendering of a decision by his failure to use the statutory remedy available to him in the statute cited.
The plaintiff's claim that a proposed finding of facts pursuant to the regulations of the defendant Department was not filed was not briefed and hence the court considers the claim was abandoned.
The plaintiff also claims that the decision was rendered in part and signed in part by one Mary Comen who did not participate in the hearings and was not appointed to the defendant Board until January 1987. That claim also was not briefed and hence the court considers the claim abandoned.
4.
The plaintiff claims that the defendant Board's interpretation of Section 20-28 (b) is improper and erroneous as a matter of law.
In its decision the defendant Board stated that a diagnostic technique may be employed only if it is taught as part of the core curriculum of an approved school or college. This concerns the coccygeal menigeal manipulation which the plaintiff admitted he had performed on a patient 5 or 6 times. (R. p. 483). The defendant Board found in its Memorandum of Decision that this manipulation was used in part for diagnostic purposes. (R. p. 3).
The defendant Board has a list of schools or colleges of chiropractic which it has recognized or approved. This was based on a list of schools or colleges accredited by the Council of Chiropractic Educations which is recognized as an accrediting body by the United States Office of Education. (Deposition of Dr. Passero, March 2, 1989 p. 48). This list is Exhibit N. The list includes 9 such schools or colleges. None of these institutions teach the procedure in question.
The plaintiff's expert, Dr. Nicholas Wisniewski from Allison Park, Pennsylvania testified that he graduated from the Palmer College of Chiropractic in 1977, one of the colleges on the defendant Board's list of recognized and approved colleges. (R. p. 486). Dr. Wisniewski testified that the procedure in question is not taught now in any chiropractic colleges (R. p. 487) and when he was in Palmer College, it was taught as an extra curricular course outside of the normal day schedule of classes, in the evenings and on weekends. It was not part of the core curriculum (R. p. 491). He paid a fee for the course. It was not part of the educational experience of the college. CT Page 1022
Section 20-28 (b)(2) states that a licensed chiropractor may:
 "Examine, analyze and diagnose the human living body and its diseases, and use for diagnostic purposes the X-ray or any other general method of examination for diagnosis and analysis taught in any school or college of chiropractic which has been recognized and approved by the state board of chiropractic examiners."
The defendant Board in its Memorandum of Decision found that the plaintiff had used a diagnostic technique which was not taught in any school or college of chiropractic which was recognized and approved by the Board. The Legislature has mandated in Section 20-28 that a licensed chiropractor may use a diagnostic technique taught in a recognized and approved school or college. Logically it follows that a licensed chiropractor may not use a diagnostic technique not taught in a recognized and approved school or college. The defendant Board has so held as stated. The court cannot say that the defendant Board's decision in so holding was arbitrary or capricious, or characterized by abuse of discretion or clearly unwarranted excuse of discretion. Section 4-183 (j) of the General Statutes.
The defendant Board's decision in this respect is affirmed.
5.
The plaintiff claims he was denied a fair hearing in several respects.
The plaintiff claims the defendant Board considered and used evidence not in the record in making its decision and the defendant Board used and considered evidence not solely adduced at the hearing. These claims are not briefed and hence the court considers the claims abandoned.
The plaintiff claims that no evidence of the standard of care relating to the plaintiff's alleged negligence was introduced and no evidence of how the plaintiff's conduct allegedly violated any standard of care was introduced. These claims are based on the fact that no expert testimony was offered to the defendant Board concerning the plaintiff's conduct. In Levinson v. Board of Chiropractic Examiners,211 Conn. 508 at p. 525 the Supreme Court said:
CT Page 1023 "As long as the board hearing and deciding a licensing matter is composed of at least a majority of experts in the field involved in the case, the board may rule on its own expertise in evaluating charges against persons licensed by the board and the requisite standard of care by which to judge such cases."
In the present case there was no majority of experts on the defendant Board hearing and deciding the matter. The defendant Board had two members, Dr. Passero, a chiropractor and Mary Comen, a public member. As there was no majority of experts on the defendant Board, the corollary to the Levinson rule requires that expert testimony be presented to the defendant Board concerning how the plaintiff acted in the various ways complained of so that the public member, Mary Comen, could properly evaluate the claims against the plaintiff. The court finds that such testimony should have been offered concerning the claim in Count 21, that the plaintiff improperly made a diagnosis without objective findings to substantiate it; the claim in Count 22 concerning the plaintiff's advice that Mark Spivey's idiopathic scoliosis was caused by emotional or psychological factors; the claim in Count 2 that the plaintiff led Cheryl Benham to believe that the plaintiff could cure migraine headaches; the claim in Count I that the plaintiff told Ms. Benham that he could cure acne; the claim in Count 6 that the plaintiff advised Ms. Benham that she could have damage to her heart; the claims in Counts 7 and 8 that the plaintiff used an excess amount of X-rays in the course of diagnosing or treating Cheryl Benham.
The plaintiff claims he did not receive any notice which was required to be sent pursuant to C.G.S. Section 4-178 (4). This claim was not briefed and hence the Court considers it abandoned.
The plaintiff claims that the use and reference by the Assistant Attorney General at the close of the hearing to unsuccessful settlement negotiations was highly prejudicial. This reference should not have been made but the court cannot see how it prejudiced the plaintiff in any way.
The plaintiff claims that the assumption of an advocates role by the Legal Advisor on the third day of the hearings was improper and highly prejudicial. The court does not understand why this was done but the court cannot see how this prejudiced the plaintiff in any way.
The plaintiff claims that the Hearing Officer and CT Page 1024 Chairman of the defendant Board did not recuse himself although he was a member of the same chiropractic group which was instrumental in the formulation and bringing of the Spivey charges. An exhibit shows that the Norwalk Chiropractic Group Inc is made up of 5 chiropractors, one of whom is Dr. Passero. Mr. Spivey consulted another member of the group, a Dr. Lawlor, after he had been treated by the plaintiff. He made an office visit to Dr. Lawlor and paid $25.00 for it. The doctor examined him and diagnosed that he had scoliosis. Dr. Passero stated on the record that he and a Dr. Hammer, also a member of the Norwalk Chiropractic Group, owned a building in Norwalk and Dr. Lawlor was a tenant in the building with his own separate practice. The Norwalk Chiropractic Group is not a professional corporation. It is a service corporation. He and Dr. Lawlor do not share income or funds. The corporation paid the expenses of running the facility and each of the doctors including Dr. Passero were independent sub contractors and each collected his own fees. (R. pp. 43-49). Dr. Lawlor did not make any complaint to the defendant Board about the plaintiff. However, Mr. Spivey did file a formal complaint based on what he had been told by Dr. Lawlor. The court cannot see that the tenuous relationships of Dr. Passero and Dr. Lawlor was a reason for Dr. Passero to recuse himself from participating in the matter.
6.
The plaintiff claims that the introduction and admission of Exhibits J and N were improper and highly prejudicial.
Exhibit J is a letter from Dr. Allen who treated Cheryl Benham after she had been treated by the plaintiff. The plaintiff has not briefed his claim concerning this exhibit and hence the court considers the claim abandoned. The court notes that the plaintiff reserved the right to call Dr. Allen but did not do so. (R. p. 231).
Exhibit N is a list of schools and colleges of chiropractic which has been recognized and approved by the defendant Board. Section 20-28 (b)(2) of the General Statutes required the defendant Board to have such a list. It is an official document of the defendant Board. The letters from the schools and colleges named in the document stating whether or not the diagnostic procedure in question is taught in the institution is a compilation of information required by the statute. Exhibit N and its attachments were properly admitted. However if there was error in its admission, the error was completely cured by the testimony of Dr. Wisniewski, the expert witness called by the plaintiff. He testified that the procedure in question is not taught in any CT Page 1025 chiropractic college (R. p. 487).
The court sustains the plaintiff's appeal as to the orders of the defendant Board concerning Counts 21, 22, 2, 1, 6, 7 and 18.
The court dismisses the plaintiff's appeal as to the orders of the defendant Board concerning Counts 8, 13, 17, 9 and 20.
The disposition of the remaining counts is as follows: Counts 3, 4 and 15 were withdrawn at the beginning of the hearings; Counts 5, 14, 10, 24, 16, 12, 11 and 23 were dismissed by the defendant Board; and Count 19 was referred by the defendant Board to another state department for handling.
THOMAS J. O'SULLIVAN, TRIAL REFEREE